FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 27, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

KATRINA P.,[1]

            Plaintiff,

   vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]

            Defendant.

No. 1:19-cv-03089-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 13, 14

      Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 14. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7.  The Court, having reviewed the administrative record and the parties' briefing,

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 13, and grants Defendant's motion, ECF No. 14.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

1    The Commissioner has established a five-step sequential analysis to

2    determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

3    416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

4    activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

5    gainful activity," the Commissioner must find that the claimant is not disabled.  20

6    C.F.R. § 416.920(b).

7        If the claimant is not engaged in substantial gainful activity, the analysis

8    proceeds to step two.  At this step, the Commissioner considers the severity of the

9    claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

10   "any impairment or combination of impairments which significantly limits [his or

11   her] physical or mental ability to do basic work activities," the analysis proceeds to

12   step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

13   this severity threshold, however, the Commissioner must find that the claimant is

14   not disabled.  20 C.F.R. § 416.920(c).

15       At step three, the Commissioner compares the claimant's impairment to

16   severe impairments recognized by the Commissioner to be so severe as to preclude

17   a person from engaging in substantial gainful activity.  20 C.F.R. §

18   416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

19   enumerated impairments, the Commissioner must find the claimant disabled and

20   award benefits.  20 C.F.R. § 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On August 10, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of August 1, 2015.[3] Tr. 214-22. The application was denied initially, and on reconsideration. Tr. 139-42; Tr. 151-53. Plaintiff appeared before an administrative law judge (ALJ) on February 23, 2018. Tr. 54-76. On May 14, 2018, the ALJ denied Plaintiff's claim. Tr. 12-32.

---

[3] Plaintiff previously filed for benefits on March 3, 2010; that application was denied by an ALJ on August 29, 2013. Tr. 77-99. The Appeals Council denied review of the prior application on March 30, 2015. Tr. 100-05.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 10, 2015.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments:  mild lumbar degenerative disc disease, anxiety, PTSD, depression, and a personality disorder.  *Id*.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform medium work with the following limitations:

> Occasional stooping and climbing; limited to performing simple, repetitive, and routine tasks requiring no more than occasional contact with the public; and can work in close proximity to other coworkers, but not on a collaborative basis.

Tr. 20.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 27.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as janitor, hand packager, and laundry worker.  Tr. 28.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from August 10, 2015, the date of the application, through the date of the decision.  *Id*.

ORDER - 7

On March 1, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-5, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly applied res judicata to the claim;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

3. Whether the ALJ properly evaluated the medical opinion evidence; and

4. Whether the ALJ conducted a proper step-three analysis.

ECF No. 13 at 2.

## DISCUSSION

**A. Res Judicata**

Plaintiff contends the ALJ improperly applied res judicata to the claim. ECF No. 13 at 5-6. "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998) (citing *Lyle v. Sec'y of Health and Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)). Under the doctrine of res judicata, a prior, final determination of nondisability bars

relitigation of that claim through the date of the prior decision. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). Furthermore, in the Ninth Circuit, a prior, final determination of nondisability "create[s] a presumption that [the claimant] continued to be able to work after that date." *Id*. (citation and internal quotation marks omitted).[4] "However, the authority to apply res judicata to the period *subsequent* to a prior determination is much more limited." *Id.* (emphasis in original).

"The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693 (citation omitted). Examples of changed circumstances include "[a]n increase in the severity of the claimant's impairment," "a change in the claimant's age category," and a new issue raised by the claimant, "such as the existence of an impairment not considered in the previous application." *Lester*, 81

_____

[4] Acquiescence Ruling (AR) 97-4(9) explains how *Chavez* differs from the Social Security Administration's (SSA) interpretation of Social Security policy requiring de novo review of claims for unadjudicated periods. The SSA applies the *Chavez* presumption only as to claimants residing in the Ninth Circuit. AR 97-4(9), available at 1997 WL 742758 at *3.

ORDER - 9

F.3d at 827-28 (citations omitted); *see* AR 97-4(9). In addition, the first ALJ's findings concerning the claimant's RFC, education and work experience are entitled to "some res judicata consideration" in later proceedings. AR 97-4(9).

Here, the ALJ found there were changed circumstances and therefore did not adopt all findings from the prior decision. Tr. 15. The ALJ reasoned Plaintiff's alleged onset date and severe impairments have changed, Plaintiff submitted new and material evidence, and the mental health listings changed after the prior decision. *Id.* The ALJ found these changes all supported a finding of changed circumstances. *Id.*

Plaintiff argues the ALJ erred in his application of res judicata to her claim because the ALJ's RFC has fewer physical limitations than the RFC from the 2013 ALJ decision. ECF No. 13 at 5-6. In 2013, the prior ALJ found Plaintiff was capable of no more than light work, with the following additional limitations:

> She can stand and/or walk for six of eight hours in a workday. She can sit for six of eight hours in a workday. She should not be required to climb other than stairs and ramps. She should avoid concentrated exposure to work place hazards, such as machinery with moving parts and work at heights. She should also avoid concentrated exposure to environmental irritants, such as fumes, noxious gases, and dust. She can persist and sustain simple, routine, repetitive work with only occasional or brief public contact.

Tr. 86.

In the instant case, the ALJ found Plaintiff capable of performing medium work with occasional stooping and climbing, without any other physical

limitations. Tr. 20. The ALJ found Plaintiff capable of simple, routine tasks and occasional contact with the public, as well as no collaborative work with coworkers. *Id.* Plaintiff argues the ALJ committed harmful error by finding Plaintiff capable of performing medium work, without explaining or citing to evidence in support of a finding that Plaintiff has improved since 2013. ECF No. 13 at 5-6.

While a previous ALJ's findings concerning a claimant's RFC are entitled to some res judicata consideration, the findings can be reconsidered by a subsequent judge upon showing of new information that was not presented to the first judge. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (citing *Chavez*, 844 F.2d at 694). In this case, the record contains evidence from treating providers as well as psychological and physical consultative examinations, which are dated after the 2013 decision.

The ALJ reasoned there are limited records during the relevant adjudicative period, and the records demonstrate Plaintiff had only intermittent complaints of back pain, and on exam, she generally had no pain, normal strength and normal range of motion. Tr. 24 (citing Tr. 345, 348-56, 575). In 2015, imaging of her back showed no evidence of acute cervical spine pathology, and no imaging of Plaintiff's lower back was

taken, which the ALJ interpreted as the provider finding there was no need

for such imaging.  Tr. 24 (citing Tr. 341, 574).  In 2016, imaging showed

mild to moderate L5-S1 disc space narrowing and mild anterior spurring, Tr.

420-21, and a 2016 consultative exam demonstrated normal range of motion,

strength, motor skills, gait and no pain or tenderness, Tr. 461-62.  The

consultative examiner opined Plaintiff had no limitations in her ability to

stand, walk, sit, or lift/carry.  Tr. 462-63.  These records presented new and

material information not presented to the first ALJ; as such, the ALJ was not

required to give the 2013 RFC preclusive effect, in light of the new and

material information.  *See Stubbs-Danielson*, 539 F.3d at 1173.   The ALJ

reasonably relied on the new evidence in assessing Plaintiff's RFC and his

determination will not be disturbed.  *See Rollins v. Massanari*, 261 F.3d 853,

857 (9th Cir. 2001).  Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in

discrediting her symptom claims.  ECF No. 13 at 6-15.  An ALJ engages in a two-

step analysis to determine whether to discount a claimant's testimony regarding

subjective symptoms.  Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at

*2.  "First, the ALJ must determine whether there is objective medical evidence of

an underlying impairment which could reasonably be expected to produce the pain

or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted). General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

symptom claims)). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 21.

First, the ALJ found the objective evidence did not support Plaintiff's allegations. Tr. 21-24. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However,

the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2). Mental status examinations are objective measures of an individual's mental health. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Here, the ALJ found the objective evidence does not support Plaintiff's allegations of disabling back pain. Tr. 21, 24. The ALJ noted that the records do not demonstrate ongoing issues with back pain, weakness, reduced range of motion or tenderness. Tr. 24 (citing Tr. 345, 348-56, 462, 514, 562, 564, 575, 588, 590). A 2016 exam demonstrated a mild to moderate limitation in some areas of Plaintiff's range of motion in her back. Tr. 24 (citing Tr. 531-32). Imaging of the cervical spine showed no acute cervical spine pathology, Tr. 574, and lumbar spine imaging showed mild to moderate L5-S1 disc and endplate degeneration, Tr. 533.

The ALJ also found the objective evidence does not support Plaintiff's allegations of disabling mental health symptoms. Tr. 22. The ALJ reasoned Plaintiff's generally stable findings on mental status exams were inconsistent with her allegations. Tr. 22-23 (citing Tr. 345, 348-61, 456-59, 575). When seen for treatment for physical symptoms, Plaintiff was generally observed as not experiencing any psychological symptoms. Tr. 23 (citing Tr. 335-38, 514, 516,

534-35, 538, 596, 603, 623, 631). Plaintiff also was observed as not having any learning barriers or functional limitations. Tr. 590.

Plaintiff contends the ALJ's summary of the evidence is inaccurate and does not support a finding that Plaintiff's allegations are not supported by the objective evidence. ECF No. 13 at 11-12. Plaintiff argues the summary includes only cursory findings regarding alertness and distress and that the citations are often inaccurate, as Plaintiff was noted as in distress in multiple cited records. *Id.* Plaintiff does not challenge the ALJ's summary of the evidence regarding Plaintiff's back impairment; a review of the evidence demonstrates the ALJ accurately summarized Plaintiff's generally normal back examinations. Tr. 345 (normal range of motion, no tenderness); Tr. 348 (normal back examination); Tr. 462 (normal examination); Tr. 514 (normal examination); Tr. 531-32 (mild to moderate limitation in some areas of range of motion in the back).

While Plaintiff is correct that some of the records indicate Plaintiff was in mild or moderate distress, none of the records demonstrate any evidence of psychological symptoms. When Plaintiff was noted as anxious or in any pain or distress, it was in the context of an acute physical issue each time, rather than a psychological issue. Tr. 335-38 (injured ankle); Tr. 351 (burn); Tr. 353 (acute otitis media and temporomandibular joint disorder); Tr. 535 (injured wrist); Tr. 575

(fall).  During the visits, Plaintiff was always alert, oriented, and never had any notes regarding abnormal mood or affect.  *See, e.g.,* Tr. 358, 514, 534-35, 575.

During a psychological consultative examination, though Plaintiff was anxious and depressed, with variable insight/judgement and a narrow range of affect, Tr. 457-58,  she had normal behavior, psychomotor functioning, eye contact, speech, interpersonal skills, persistence, orientation and abstract thinking, *Id*.  On exam, Plaintiff's short-term memory and concentration were normal, though she exhibited some difficulty staying on track and sharing information in a logical manner during the conversation.  Tr. 458.

The cited evidence demonstrates Plaintiff has generally not exhibited nor reported psychological symptoms at appointments and Plaintiff does not point to any evidence of ongoing psychological symptoms in the records.  Plaintiff was only occasionally observed as anxious, Tr. 524, 549, 564, and generally the notes indicate no presence of observable psychological symptoms, Tr. 337, 355, 361, 366, 514, 590.  While Plaintiff alleges she has panic attacks and agoraphobia, Tr. 59, she has only reported panic attacks and agoraphobia once to a provider, when she was seeking completion of paperwork for benefits, Tr. 523-25.  The ALJ reasonably concluded that the objective evidence is inconsistent with Plaintiff's symptom complaints.

Second, the ALJ found Plaintiff's activities of daily living were inconsistent with her allegations. Tr. 21. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins,* 261 F.3d at 857. However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

Here, the ALJ found Plaintiff's activities were inconsistent with her reported disabling back pain and mental health symptoms. Tr. 21. While Plaintiff alleges limitations in exertional and postural activities, and mental functioning, *Id.* (citing

Tr. 261), she reported the ability to engage in most activities independently, Tr. 21 (citing Tr. 257-60). The ALJ considered Plaintiff's ability to independently care for herself, pets, and her child, including providing transportation, handling household chores, grocery shopping and managing her money. Tr. 21-22 (citing Tr. 257-60, 274-77, 302-05, 462-63). The ALJ reasoned Plaintiff's socializing with her son and mother, trips to the store and to provide her son's transportation, and her use of Facebook, were inconsistent with her alleged social isolation. Tr. 24. The ALJ also considered Plaintiff's physical activities to be inconsistent with her allegations of back pain, including her physical care for her son and pets, ability to mow the lawn, clean her house and carry firewood. Tr. 24-25 (citing Tr. 256-59, 274-77, 302-05, 461-62, 470, 514, 574-75).

Plaintiff argues the ALJ erred because the findings were not specific enough. ECF No. 13 at 7. Plaintiff contends the ALJ did not properly explain how Plaintiff's activities within her home and socializing with her family was inconsistent with her allegations of disabling mental impairments, specifically agoraphobia, as her allegations primarily relate to limitations in activities outside of the home. ECF No. 13 at 7-9. Plaintiff also contends the ALJ did not explain how the physical activities are inconsistent with any allegations, and argues the activities are not comparable to any work activity. ECF No. 13 at 9-10.

ORDER - 19

The ALJ specifically noted that Plaintiff alleged difficulty with all of the following physical activities: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling and stair climbing. Tr. 21 (citing Tr. 261). These allegations, and the allegation of disability due to a back impairment, are inconsistent with Plaintiff's reported ability to handle personal care and care for pets and her son, mow the lawn, carry firewood, go outside daily, walk, shop, drive and go places regularly. Tr. 21 (citing Tr. 257-60, 264). Plaintiff's care for her son includes changing, bathing, dressing, playing with him and providing transportation for him. Tr. 21 (citing Tr. 257-60, 264). The activities summarized by the ALJ include Plaintiff taking her son to school, visiting her mother, and grocery shopping, all of which require leaving her home, and are inconsistent with the allegation of agoraphobia. Tr. 24. The ALJ reasonably concluded that Plaintiff's activities of daily living were inconsistent with her allegations of disabling back pain and mental health symptoms.

Third, the ALJ found Plaintiff's minimal treatment inconsistent with her allegations. Tr. 22. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a

claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints.  *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, the ALJ observed that Plaintiff has had limited treatment since her alleged onset date.  Tr. 22.  Plaintiff testified at the hearing that she was not seeking treatment for her anxiety nor pain.  Tr. 21, 63-64.  The ALJ reasoned that such a limited record made it difficult for the Plaintiff to show any significant and consistent limitations.  Tr. 21.  The ALJ found the record did not support Plaintiff's alleged severity of her symptoms.  *Id.*

Plaintiff argues the ALJ erred by not considering the barrier to accessing care caused by Plaintiff's agoraphobia.  ECF No. 13 at 13.  Plaintiff argues the ALJ found anxiety to be a severe impairment, which "encompasses the symptoms

of agoraphobia," and thus the ALJ should have considered the effect Plaintiff's agoraphobia had on her ability to access treatment. ECF No. 16 at 3. However, Plaintiff only reported agoraphobia symptoms at a single visit in May 2016. Tr. 503-04, 524-25. She has not reported difficulty accessing treatment for any reason during the relevant adjudicative period. At the hearing, Plaintiff testified she had not found medications or injections effective for her anxiety or pain but provided no explanation as to why she was not seeking any other form of treatment. Tr. 63-64. Further, as discussed above, Plaintiff has reported an ability to leave her home to visit her mother, shop, provide transportation for her son and attend appointments, and she reported trying to leave her home daily. Tr. 257-60, 264. The evidence does not support a finding that Plaintiff's mental impairments impeded her ability to access care.

On this record, the ALJ reasonably concluded that the objective evidence, Plaintiff's activities of daily living and Plaintiff's lack of treatment were inconsistent with Plaintiff's allegations. These findings are supported by substantial evidence and were clear and convincing reasons to discount Plaintiff's symptoms complaints. Plaintiff is not entitled to remand on these grounds.

**C. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his analysis of the opinions of Dr. Miller and Ms. Elliott. ECF No. 13 at 15-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. § 416.902[5] (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists. 20 C.F.R. § 416.927(f).[6] An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

---

[5] Prior to March 27, 2017, the definition of an acceptable medical source was located at 20 C.F.R. § 416.913.

[6] Prior to March 27, 2017, the requirement that an ALJ consider evidence from non-acceptable medical sources was located at 20 C.F.R. § 416.913(d).

*1. Dr. Miller*

Dr. Miller performed a psychological consultative examination of Plaintiff in 2016 and provided an opinion on Plaintiff's functioning. Tr. 456-59. Dr. Miller opined Plaintiff is able to reason and solve simple problems, can understand and remember simple instructions, and she can adapt to change. Tr. 459. Dr. Miller further opined Plaintiff gets overwhelmed with complicated problems, gets confused/overwhelmed with complicated instructions, is easily sidetracked and forgets what she needs to do, is often irritable and worried and does not socialize much outside of her family. *Id.* The ALJ gave Dr. Miller's opinion partial weight. Tr. 25. As Dr. Miller's opinion is contradicted, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Miller's opinion regarding Plaintiff's social limitations is inconsistent with her own examination notes. Tr. 25. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's own treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).

ORDER - 25

On exam, Dr. Miller found Plaintiff was cooperative, had normal eye contact, behavior, persistence and motivation, and adequate interpersonal skills. Tr. 25, 457. Plaintiff was also anxious and depressed, as well as tearful throughout the assessment. Tr. 457. Plaintiff sobbed during the exam when discussing her children who no longer live with her, reported her mood as terrible, and she had a narrow range of affect. Tr. 457-58. She had some difficulty following the conversation, required redirection at times, tended to focus the conversation back on her emotional problems, and had difficulty organizing her thoughts into a logical story. Tr. 458. Plaintiff was easily re-directed though and was able to complete the examination with normal results on the memory and concentration testing. *Id.*

While Plaintiff exhibited some abnormalities on exam, Plaintiff's normal eye contact, ability to be easily re-directed to the conversation and to complete the exam with normal scores, and Dr. Miller finding Plaintiff had normal behavior and adequate interpersonal skills, demonstrates an ability to engage in a social situation. Tr. 457-58. The ALJ's interpretation of the evidence is reasonable and thus will not be disturbed. *See Rollins*, 261 F.3d at 857. This was a specific and legitimate reason to reject Dr. Miller's opinion.

Second, the ALJ found Plaintiff's activities of daily living were inconsistent with Dr. Miller's opinion. Tr. 25. An ALJ may discount a medical source opinion

ORDER - 26

to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ALJ found the records, which indicate Plaintiff can function independently and is capable of occasional public contact, inconsistent with Dr. Miller's opinion. Tr. 25 (citing Tr. 257-62, 274-77, 302-05, 457-58).

While Dr. Miller stated Plaintiff does not socialize much outside of her home and is often irritable and worried, Tr. 459, the ALJ's finding that Plaintiff's activities suggest that she can engage in activities outside of her home and with individuals who are not family members is reasonable and will not be disturbed. Plaintiff reported to Dr. Miller that she had no friends. Tr. 456. However, in December 2014, Plaintiff was living with a friend/boyfriend. Tr. 375. In December 2016, a friend brought Plaintiff to the hospital multiple times. Tr. 516, 626, 635. Plaintiff reported talking on the phone daily with her mother, and with others several times per month, as well as using the internet to communicate with others, going to the grocery store twice per month, doctors' offices as needed, and seeing others in her home or in the store. Tr. 260. This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Miller's opinion.

Plaintiff argues the ALJ improperly rejected Dr. Miller's opinion that Plaintiff has limitations in staying on-task without getting sidetracked or forgetting what she needs to do. ECF No. 13 at 16-17. Plaintiff argues this was a harmful

error because the vocational expert testified an individual who would be off task more than 20 percent of the time is not competitively employable. ECF No. 13 at 17. Plaintiff's interpretation of this portion of the opinion is inconsistent with Dr. Miller's full opinion.

Dr. Miller opined that Plaintiff is capable of understanding and remembering simple instructions, reasoning and solving simple problems, and adapting to change. Tr. 459. While Dr. Miller opined Plaintiff "struggles to maintain her concentration and attention," Dr. Miller did not quantify the opinion and did not give any indication that Plaintiff would be unable to perform simple tasks due to impaired concentration/attention. *Id.* The ALJ interpreted Dr. Miller's opinion as meaning she believed Plaintiff could sustain simple, routine tasks. Tr. 25. Plaintiff urges for another interpretation of the opinion, however, "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Despite Plaintiff's assertions otherwise, Dr. Miller's statements are not discrete limitations. The possibility of a limitation is not a limitation, let alone an indicator as to the severity of such potential limitation. Therefore, the ALJ's determination limiting Dr. Miller's opinion to the simple, routine tasks limitation, is reasonable.

Even if the ALJ rejected Dr. Miller's opinion regarding Plaintiff struggling with concentration and attention, the error would be harmless. Given the lack of

specific limitations regarding concentration, there are no specific limitations the ALJ failed to include, and the failure to include the limitations could not have impacted the final disability determination. *Id*. at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"). The ALJ gave specific and legitimate reasons, supported by substantial evidence, to reject Dr. Miller's opinion.

### 2. Ms. Elliott

Ms. Elliott, PA-C, performed a physical evaluation of Plaintiff in 2016 and provided an opinion on Plaintiff's functioning. Tr. 502-06. Ms. Elliott opined Plaintiff's spinal stenosis with disc protrusion, neuropathy, agoraphobia and anxiety caused moderate to severe limitations in the following activities: sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, crouching and communicating. Tr. 503. She opined Plaintiff is unable to meet the demands of sedentary work, and the limitation would last six to twelve months. Tr. 504. Ms. Elliott noted Plaintiff's x-rays and other previous back studies were needed, and recommended she see a spine specialist, psychologist and psychiatrist, and that she start taking gabapentin. *Id.* The ALJ gave Ms. Elliott's opinion little weight. Tr. 25. As Ms. Elliott is a non-acceptable medical source, the ALJ was required to give germane reasons for rejecting the opinion. *See Ghanim*, 763 F.3d at 1161.

ORDER - 29

First, the ALJ found the opinion is not supported by the longitudinal record. Tr. 25. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. Here, the ALJ found the evidence from the relevant adjudicative period was inconsistent with Ms. Elliott's opinion. Tr. 25. Dr. Leinenbach's examination resulted in an opinion that Plaintiff had minimal postural limitations and no exertional limitations. *Id.* (citing Tr. 462-63). Additionally, the imaging showed only mild lumbar degeneration. Tr. 25 (citing Tr. 420-21, 507).

Plaintiff argues the ALJ erred in rejecting Ms. Elliott's opinion based on the other evidence, specifically Dr. Leinenbach's opinion, as the ALJ did not give full weight to Dr. Leinenbach's opinion. ECF No. 13 at 19. Plaintiff urges the Court to re-weigh the evidence. However, it is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *See Rollins*, 261 F.3d at 857. The ALJ cited to evidence that is inconsistent with Ms. Elliott's opinion, including an examination, opinion and imaging. This was a germane reason to reject Ms. Elliott's opinion.

Second, the ALJ found the opinion is not supported by Ms. Elliott's own examination notes. Tr. 25. An opinion may be rejected if it is unsupported by the provider's treatment notes. *Connett*, 340 F.3d at 875. Here, the ALJ reasoned Ms. Elliott's exam showed only mild to moderate limitations in some areas of Plaintiff's range of motion of her back. Tr. 25 (citing Tr. 505-06).

Plaintiff argues Ms. Elliott's opinion was consistent with her examination notes, because her opinion that Plaintiff cannot sustain even sedentary work is based on a combination of Plaintiff's mental and physical limitations, not just her physical symptoms. ECF No. 13 at 18. However, Ms. Elliott noted Plaintiff's chief complaints were chronic low back pain, neuropathy, and anxiety. Tr. 502. Ms. Elliott opined Plaintiff's spinal stenosis and neuropathy cause marked to severe limitations in her ability to stand, sit, walk, lift, carry, handle, push, pull, reach, stoop and crouch. Tr. 503. She opined Plaintiff's agoraphobia and anxiety impacted only her ability to communicate. *Id.* These notes indicate that Ms. Elliott based her opinion at least in part on Plaintiff's physical impairments.

Ms. Elliott's opinion that Plaintiff's spinal stenosis and neuropathy cause marked to severe limitations is out of proportion with the exam, in which Plaintiff had generally normal range of motion, with decreased range in her back, hip and neck of only five to fifteen degrees in most areas with limitations, while she had a twenty five degree impairment in her back flexion. Tr. 506. The form asks Ms.

Elliott to attach chart notes detailing any examination findings; there are no findings regarding Plaintiff's strength, gait, sensation, or reflexes. Tr. 503, 505-09. The attached imaging showed only mild disc and endplate degeneration, Tr. 507, and while there was a disk protrusion with crowding of the left S1 nerve root, the MRI findings state the "visualized spinal cord and nerve roots are within normal limits," Tr. 509. This was a germane reason to reject Ms. Elliott's opinion.

Third, the ALJ found the opinion is inconsistent with Plaintiff's activities of daily living. Tr. 25-26. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan,* 169 F.3d at 601-02. Here, the ALJ found Ms. Elliott's opinion inconsistent with Plaintiff's reported ability to carry firewood, mow the lawn, care for her son, shop, drive, and perform household chores. Tr. 25-26 (citing Tr. 257-62, 274-77, 302-05). As discussed above, the ALJ's determination that Plaintiff's activities are inconsistent with the inability to perform even sedentary work is reasonable.

The ALJ gave germane reasons for rejecting Ms. Elliott's opinion. Plaintiff is not entitled to remand on these grounds.

**D. Step Three**

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet or equal a listing. ECF No. 13 at 19-21. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20

C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.' " *Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (*citing Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy*, 758 F.3d at 1176. If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed

impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099. However, " '[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.' " *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairments. *Burch*, 400 F.3d at 683. "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." SSR 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listing, including listings 12.04 (depressive, bipolar and related disorder), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders) and 12.15 (trauma- and stressor-related disorders). Tr. 18-19. Plaintiff argues the ALJ erred in finding Plaintiff does not meet or equal a listing. ECF No. 13 at 19-21. However, Plaintiff fails to

specify which listing Plaintiff meets or equals.  Plaintiff argues only that the Paragraph B criteria associated with the mental health listings was met.  *Id.*  The Paragraph B criteria for the mental listings are met if the impairment results in an "extreme" limitation of one or "marked" limitation of two of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  20 C.F.R. § 404, Subpart P, Appendix I.  "Marked" means more than moderate but less than extreme.  *Id.*

Plaintiff argues the ALJ erred in finding Plaintiff has only a mild limitation in adapting or managing oneself, and in finding Plaintiff has only a moderate limitation in interacting with others.  ECF No. 13 at 19-21.  Plaintiff contends she has marked limitations in both areas of functioning, and thus the ALJ erred in not finding she meets or equals a listing.  *Id.*  To meet a listing, the Plaintiff has the burden of demonstrating each component of the listing is met.  *Tackett,* 180 F.3d at 1099; *Burch*, 400 F.3d at 683.

For each of the four mental listings the ALJ considered, satisfying the Paragraph B criteria is not sufficient to meet the listing- the Plaintiff must also satisfy the Paragraph A criteria.  The Paragraph A criteria of Listing 12.04 requires, in relevant part, documentation of Plaintiff exhibiting at least five of the following: depressed mood; diminished interest in almost all activities; appetite

disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; and thoughts of suicide or death.  20 C.F.R. § 404, Subpart P, Appendix I.  The Paragraph A criteria for Listing 12.06 requires, in relevant part, either documentation of 1) documentation of at least three of the following: restlessness; easily fatigued; difficulty concentrating; irritability; muscle tension; and sleep disturbance; or 2) agoraphobia, characterized by panic attacks followed with persistent concern/worry about additional attacks or their consequences, or disproportionate fear/anxiety about at least two different situations.  *Id.*

The Paragraph A criteria for Listing 12.08 requires documentation of a pervasive pattern of one or more of the following: distrust and suspiciousness of others; detachment from social relationships; disregard for and violation of the rights of others; instability of interpersonal relationships; excessive emotionality and attention seeking; feelings of inadequacy; excessive need to be taken care of; preoccupation with perfectionism and orderliness; or recurrent, impulsive, aggressive behavioral outbursts.  *Id.*  The Paragraph A criteria for Listing 12.15 requires documentation of all of the following: exposure to actual or threatened death, serious injury or violence; subsequent involuntary re-experiencing of the

traumatic event; avoidance of external reminders of the event; disturbance in mood and behavior; and increases in arousal and reactivity.  *Id.*

The ALJ did not address the Paragraph A criteria for any of the listings, as the Paragraph B criteria were not satisfied, and Plaintiff does not address any of the Paragraph A criteria.  Even if an argument was set forth regarding the Paragraph A criteria for the listings, the evidence does not demonstrate that Plaintiff meets the criteria for any of the listings.  There is minimal documentation of Plaintiff's symptoms of depression, anxiety, PTSD and personality disorder.  As discussed above, while Plaintiff alleges agoraphobia, it has only been reported at one appointment and there is minimal evidence of Plaintiff experiencing agoraphobia. There is not evidence of Plaintiff having a pervasive pattern of any of the listed symptoms in the Listing 12.08 Paragraph A criteria.  While Plaintiff has reported some components of Listing 12.15, such as occasionally reporting disturbed sleep, Tr. 294, 456, and a single report of nightmares/flashbacks, Tr. 457, there is not evidence that these symptoms were ongoing, nor that Plaintiff avoided external reminders of the event.  As the Paragraph A criteria is not met for any listing, any error on the ALJ's part regarding the Paragraph B criteria would be harmless.  *See Tommasetti*, 533 F.3d at 1038.  Plaintiff is not entitled to remand on these grounds.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13** is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED November 27, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 38